IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 4, 2014 Session

**DAVID R. SEATON ET AL. v. WISE PROPERTIES-TN, LLC**

**Appeal from the Chancery Court for McMinn County**
**No. 24307     Lawrence H. Puckett, Judge[1]**

_____

**No. E2013-01360-COA-R3-CV-FILED-APRIL 30, 2014**

_____

This case involves the trial court's award of attorney's fees to the defendant property buyer upon remand from this Court. The sellers initiated the original action for specific performance and breach of contract after the buyer refused to close on the purchase of real property. The buyer filed a counterclaim requesting attorney's fees. The buyer subsequently moved for summary judgment, arguing that the sellers had been the first to breach the contract by failing to fulfill a condition precedent. The trial court granted summary judgment in favor of the buyer, and the seller appealed. Upon that original appeal, while this Court affirmed summary judgment, the issue of attorney's fees was not raised. Following this Court's remand to the trial court, the buyer moved for an award of attorney's fees, pursuant to a default provision of the parties' agreement. After conducting a post-remand hearing, the trial court awarded the buyer attorney's fees in the amount of $106,485. The seller appeals. We conclude: (1) that the buyer abandoned its counterclaim for attorney's fees by failing to question the finality of the summary judgment and by failing to raise the issue during the first appeal and (2) that the trial court exceeded its authority by considering the buyer's post-remand motion. We therefore vacate the trial court's award of attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J., joined.

H. Wayne Grant, Chattanooga, Tennessee, for the appellants, David R. Seaton and Paul Ray Seaton.

_____

[1]Sitting by interchange.

Gary R. Patrick and McKinley S. Lundy, Jr., Chattanooga, Tennessee, for the appellee, Wise Properties-TN, LLC.

**OPINION**

I.  Factual and Procedural Background

The trial court originally granted summary judgment to the defendant, Wise Properties-TN, LLC ("Wise"), in an order entered July 26, 2011.  The plaintiffs, David R. Seaton and Paul Ray Seaton ("the Seatons"), subsequently appealed the decision, and this Court affirmed summary judgment.  *See Seaton v. Wise Properties-TN, LLC*, No. E2011-01728-COA-R3-CV, 2012 WL 2362144 (Tenn. Ct. App. June 22, 2012).  In pertinent part, this Court stated the facts giving rise to the action as follows:

> In late 2007 or early 2008, Wise Properties-TN, LLC[FN] ("Wise") and Paul Ray ("Ray") Seaton's real estate agent, Tad Bromfield, discussed the possibility of a real estate transaction involving parcels of land in Athens, Tennessee, owned by Mr. Seaton and his son, David R. Seaton (collectively "the Seatons").  According to Wise, it was interested in acquiring the land for a commercial car wash and an apartment complex.  Along with Mr. Bromfield, the primary facilitator of the negotiations was William ("Bill") Alt, a Chattanooga attorney.  It appears that Mr. Alt had represented Wise in a number of legal matters; however, he had represented the Seatons for a much longer period of time.  Mr. Alt never discussed any potential conflict of interest with Wise.  He communicated with both Wise and the Seatons about the parcels at issue, and proceeded to draft relevant documents.

> [FN]:  John S. Wise, III, President and Sole Member.

> In January 2008, the parties circulated a draft purchase and sale agreement ("the Agreement") whereby Wise would purchase the Seatons' land in Athens for $1,000,000 total, $50,000 of which was to be paid in escrow as a down payment.  Pertinent sections of the Agreement provided as follows:

> . . .

> **5. Title Evidence.**

> (a) No later than Ten (10) days **[?]**[FN] the Effective Date, Seller, shall cause title to the Property to be examined and upon receipt

-2-

furnish to Purchaser a copy of the commitment for title insurance on the Property (the "Title Commitment"). If (i) the Title Commitment shows that Seller does not have good and marketable title to the Property in fee simple; or (ii) the Property is subject to any defects, liens, encumbrances, easements, rights-of-way, covenants, reservations or restrictions, other than the Permitted Exceptions, then Purchaser shall, within Two (2) days of its receipt of the Title Commitment, . . . give notice in writing to [Seller] of any objections to the title to the Property. The matters that are set forth in such written notice are hereinafter referred to as "Title Objections."

> [FN] A word or phrase is missing. The Seatons contend that the Agreement specified that the Seller (the Seatons) would cause the title to the property to be examined no later than ten days "following" the effective date of the Agreement, but assert that the document does not fix any time within which a copy of the commitment for title insurance must be furnished to the Buyer (Wise).

(b) Seller shall, upon receipt of notice of the Title Objections, promptly undertake and complete at its expense all actions as are necessary to satisfy or remedy the Title Objections. If Seller has not so satisfied or remedied the Title Objections by the Closing Date, as hereinafter defined, then Purchaser may: (i) Terminate this Agreement and the Earnest Money shall be returned to Purchaser, together with the expense incurred by the title company providing the Title Commitment; or (ii) Unilaterally extend the Closing Date for a period not exceeding thirty (30) days to allow the Seller to satisfy or otherwise cure the Title Objections, or (iii) Elect to waive the Title Objections and close on the purchase of the Property without reduction in the purchase price. Notwithstanding the foregoing, monetary liens may be satisfied out of the proceeds due Seller at Closing.

* * *

**10. Default.** Should either party default in the performance of any of its obligations set forth in this Agreement to be performed prior to the Closing, which default is not cured after five (5) days written notice thereof, or, should there be a breach by either party of any of their respective representations and warranties as contained herein, which has not otherwise been specifically addressed in other provisions of this Agreement, then the non-defaulting or non-breaching party shall be entitled to exercise all remedies as may be available to it by law, in equity or by statute and the non-defaulting party shall be entitled to recover its costs as a result of such default or breach, including reasonable attorney's fees and litigation costs.

. . .

Mr. Alt subsequently drafted an amendment to the Agreement . . . . Wise and Ray Seaton both executed the amendment on February 7, 2008.

On February 20, 2008, Mr. Alt contacted David Siklosi, a title attorney in Athens, to raise certain specific questions relating to potential issues regarding the title to the property; subjects addressed included rezoning, a possible utility easement, and a claimed right-of-way. On March 26, 2008–nearly two months after the effective date in the Agreement–Mr. Siklosi was asked if he could insure a title to the Seatons' property that accounted for a roadway easement at issue. However, immediately after sending this letter, and before Mr. Siklosi could respond, Mr. Alt contacted him and told him to take no action.

During this time period, Wise had been searching for commercial financing. Despite the fact that it could secure some financing through the Seatons, Wise needed another significant source of capital before it could purchase or develop the Seatons' property as planned. According to Wise, by the end of March 2008, it became clear that adequate financing for the proposed project was not available.[FN] Around two weeks before the closing date in the Agreement, on April 3, 2008, Wise stopped payment on the $50,000 earnest money check.

[FN] In its amended answer to the Seatons' complaint, Wise asserted that it had engaged in a good faith effort to obtain financing. Several banks were approached but all declined to extend financing. Wise claimed that the true intention of the

parties prior to the execution of the Agreement was to make Wise's performance contingent upon the ability to obtain financing. The Seatons argue that the Agreement did not condition Wise's purchase of the property on the ability to obtain financing.

. . .

After Wise repudiated the Agreement by stopping payment on the earnest money check, Mr. Alt attempted to revive the deal contained in the Agreement; however, his attempts were unsuccessful. On June 4, 2008, Mr. Alt informed Wise by letter that, due to its "failure of performance" under the Agreement, the Seatons "declare[d] the contract of purchase to be terminated." On October 10, 2008, the Seatons filed this lawsuit.

Wise moved for summary judgment on May 10, 2011, arguing that under Tennessee law, a seller of real estate is not entitled to hold a buyer responsible for breach when the seller did not perform all prerequisite conditions contained in the Agreement. Wise asserted that the Seatons had not provided proof of clear title or a title insurance policy. After a hearing, the trial court ruled as follows from the bench:

> I believe that I'm going to enforce the agreement, paragraph five, that the title was required to be–I'm going to read it and quote it, "No later than ten days the effective date, seller shall cause title to the property to be examined and upon receipt furnish a copy of the commitment for title insurance on the property, and then in parentheses, (the Title Commitment.)"
>
> Now, that was never done. It's not even in dispute it was never done within the ten days. And there was no waiver because it wasn't known. It was something that only would be known to the buyer if the sellers chose to divulge it. There's no triggering of the default because he didn't know it either until–and could not know it unless the sellers told him.
>
> Now, this contract is required to have things done promptly. Time is of the essence as part of this contract. Everybody is bound by that. As soon as the property was–the title was examined it says upon receipt they were to furnish to the

purchaser a copy of the commitment for title insurance. So based on the *Nichols* [*v. Blocker*, 1988 WL 39569 (Tenn. Ct. App. Apr. 29, 1988)] case I'm going to grant summary judgment.

In other words, he had a right to withdraw his deposit. There doesn't need to be anything more said.

And the contract was definitely repudiated by his act of notifying you he was withdrawing his deposit. And then, of course, it was also treated as terminated by the sellers, treated as terminated effective upon his withdrawal of his escrow deposit. So that's the ruling of the Court.

*Seaton*, 2012 WL 2362144 at *1-4.

Following entry of this Court's opinion and judgment affirming the trial court's grant of summary judgment, the Seatons filed an application for permission to appeal with the Tennessee Supreme Court, which was subsequently denied on October 16, 2012. The action was then remanded to the trial court, pursuant to this Court's judgment, "for collection of costs assessed below." The conclusion section of this Court's opinion directed that the case was "remanded for any further proceedings that may be required." *Id*. at *8.

Upon remand to the trial court, Wise filed a motion requesting an award of attorney's fees for services rendered at both the trial court level and on appeal. In its motion, Wise argued that attorney's fees should be awarded pursuant to the "Default" provision of the parties' Agreement. Wise attached an affidavit from its counsel delineating the work performed and an affidavit from attorney Sam D. Elliott, a past president of the Tennessee and Chattanooga Bar Associations, attesting that the fees charged by Wise's counsel were reasonable. The Seatons responded to Wise's motion, arguing that Wise's only contractual remedy for the breach found by the trial court had been exercised through termination of the Agreement and that the fees claimed by Wise's counsel were unreasonable. The Seatons attached to their response affidavits from three McMinn County attorneys, attesting to prevailing rates for legal services in McMinn County.

Following a bench hearing conducted on December 10, 2012, the trial court announced its ruling that Wise was entitled to an award of attorney's fees, which the court determined would reasonably equal $275 for each hour spent by lead attorney Gary R. Patrick and $175 for each hour of work performed by Mr. Patrick's associates. In a written

Order entered January 10, 2013, the trial court set the total amount of attorney's fees awarded to Wise at $106,485.

On February 11, 2013, the Seatons filed a motion to alter or amend the judgment, pursuant to Tennessee Rule of Civil Procedure 59. The Seatons requested that they be allowed to present testimony from expert witnesses, attorneys practicing in Athens, Tennessee, who would clarify the amount of prevailing fees charged in the locale for representation on commercial litigation. The trial court heard the Seatons' expert witnesses during a hearing conducted on April 15, 2013. In an order entered May 3, 2013, the court denied the Seatons' motion to alter or amend the judgment and confirmed the award of $106,485 in attorney's fees to Wise. The Seatons timely appealed.

## II. Issues Presented

On appeal, the Seatons raise nine questions for our review, which we have consolidated into three issues and restated as follows:

1. Whether the trial court exceeded its authority on remand from the appellate court by considering and entering a judgment upon Wise's post-remand motion for attorney's fees.

2. Whether the trial court erred in awarding attorney's fees to Wise based on the provision regarding attorney's fees in the parties' Agreement.

3. Whether the trial court erred by determining that the award to Wise of $104,485 in attorney's fees was reasonable.

## III. Standard of Review

We review the trial court's conclusions of law, including its interpretation of a written agreement, *de novo* with no presumption of correctness. *See Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011); *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). We presume the factual findings of the trial court to be correct and will not overturn those findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Morrison v. Allen*, 338 S.W.3d 417, 425 (Tenn. 2011). "In order for the evidence to preponderate against the trial court's finding of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and

shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison*, 338 S.W.3d at 426; *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

## IV. Trial Court's Authority on Remand

The Seatons contend that the trial court exceeded its authority on remand by considering Wise's motion for attorney's fees when the issue was not raised by the parties or addressed by this Court in the previous appeal. The Seatons further argue that Wise abandoned its claim for attorney's fees (1) by failing to raise the issue with the trial court when the lower court did not address the claim in its summary judgment order and (2) by subsequently failing to raise the issue during the first appeal. Wise contends that the Seatons waived their objection to consideration of attorney's fees on remand when they failed to raise the objection during the two post-remand hearings. We conclude that Wise abandoned its claim for attorney's fees following the trial court's entry of summary judgment and that the trial court therefore exceeded its authority by considering Wise's post-remand motion for attorney's fees.

We note first that in presenting this issue, the Seatons conflate the trial court's authority on remand somewhat with subject matter jurisdiction. We do not find the lower court's consideration of the post-remand motion to be an issue of subject matter jurisdiction. Pursuant to Tennessee Code Annotated § 21-1-810 (2009), the instant action was "reinstated in the lower court from the time of filing with the clerk and master or clerk of the court a certified copy of the decree or mandate of the appellate court . . . ." *See also Parrish v. Marquis*, 137 S.W.3d 621, 624 (Tenn. 2004) ("When an appellate court remands an action to a trial court, the trial court regains jurisdiction over the matter." (citing Tenn. Code Ann. § 21-1-810)). The trial court was constrained, however, by this Court's remand instructions, derived from this Court's opinion and judgment on the issues presented during the first appeal. *See Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976) ("[O]ur courts recognize and apply the rule that lower courts are bound by the decisions of higher courts."); *Cook v. McCullough*, 735 S.W.2d 464, 470 (Tenn. Ct. App. 1987) ("Neither the Trial Judge nor this Court has authority to expand the limitation placed by the Supreme Court upon a remand.").

As this Court has explained:

It is true that a trial court may not disregard or modify the opinion of an appellate court. *See Earls v. Earls*, No. M1999-00035-COA-R3-CV, 2001 WL 504905, at *3 (Tenn. Ct. App. M.S., filed May 14, 2001). However, a trial court is not necessarily powerless to conduct any proceedings on remand. This Court has reviewed the authority of a trial court on remand and found as follows:

Once the mandate [from an appellate court] reinvests the trial court's jurisdiction over a case, the case stands in the same posture it did before the appeal except insofar as the trial court's judgment has been changed or modified by the appellate court. . . . [T]he trial court does not have the authority to modify or revise the appellate court's opinion, or to expand the proceedings beyond the remand order. The trial court's sole responsibility is to carefully comply with directions in the appellate court's opinion.

*Id.* (internal citations omitted).

*Freeman Indus. LLC v. Eastman Chem. Co.*, 227 S.W.3d 561, 567 (Tenn. Ct. App. 2006).

Wise initiated its claim for attorney's fees in a counterclaim filed with its amended answer to the original complaint on April 25, 2011. Wise originally argued that the parties did not have an enforceable contract, but in the alternative, Wise stated the following:

[I]f the Court finds there is a contract, the Contract provides that the prevailing party is entitled to recover its attorney fees. In such a case, [Wise] asks the Court to award attorney fees to [Wise] in an amount to be shown either during the trial or after the trial has been concluded.

Wise's subsequent motion for summary judgment, filed on May 10, 2011, was silent as to a claim for attorney's fees. The trial court's order granting summary judgment, entered July 26, 2011, did not address the counterclaim for attorney's fees. Following the trial court's entry of summary judgment and prior to the Seatons' filing a notice of appeal, Wise did not file a motion to alter or amend the judgment or any other post-judgment motion regarding attorney's fees. Wise filed no application for interlocutory appeal by permission under Tennessee Rule of Appellate Procedure 9 or extraordinary appeal by permission under Tennessee Rule of Appellate Procedure 10. Moreover, the trial court did not certify the order as final under Tennessee Rule of Civil Procedure 54.02.[2] Therefore, this Court's jurisdiction

---

[2]Tennessee Rule of Civil Procedure 54.02 provides in pertinent part:
When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

to hear the first appeal was predicated upon the finality of the trial court's summary judgment order. *See* Tenn. R. App. P. 3(a) ("Except as otherwise permitted in Rule 9 and Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable . . . ."); *see also Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) ("Unless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only.") (citing *Aetna Cas. & Sur. Co. v. Miller*, 491 S.W.2d 85, 86 (Tenn. 1973)).

Wise participated in the first appeal process without ever questioning the finality of the trial court's summary judgment order. In addition, Wise's briefs in response to the first appeal and to the Seatons' Rule 11 application to the Supreme Court, both filed as supplements to the record for this appeal, demonstrate that Wise did not raise the issue of attorney's fees at all during the first appeal process. On appeal, "[r]eview generally will extend only to those issues presented for review." Tenn. R. App. P. 13(b); *see also* Tenn. R. App. P. 27(a)(4) (requiring that an appellant set forth in the principal brief "[a] statement of the issues presented for review."). This Court accordingly did not address in the first appeal the absence of a decision regarding attorney's fees in the trial court's summary judgment order. *See Seaton*, 2012 WL 2362144.

We note also that although a portion of the attorney's fees the trial court awarded to Wise on remand were for services counsel rendered during the first appeal, Wise failed to direct a request for appellate attorney's fees to this Court during that appeal. "'[W]hen a party is seeking attorney fees incurred on appeal, that request, absent any statute or rule directing otherwise, must be directed first to the appellate court in a timely fashion.'" *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 410 (Tenn. 2006) (quoting with approval *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 537 (Tenn. Ct. App. 2002)). As our Supreme Court explained in *Killingsworth*, "[a] claim for appellate attorney's fees is an issue that should be set before the appellate court because a remand to the trial court is not a foregone conclusion." 205 S.W.3d at 410.

Upon our thorough review of the record, we determine that Wise abandoned its counterclaim for attorney's fees when it failed to object to the finality of the trial court's summary judgment regarding the Seatons' first appeal to this Court. We conclude that this Court's instruction on remand for the trial court to conduct "any further proceedings that may be required" in enforcing the affirmed judgment and collecting costs did not authorize the trial court to reopen a claim previously abandoned by one of the parties and therefore previously settled. *See Seaton*, 2012 WL 2362144 at *8; *see, e.g., Clark v. Clark*, No. M2006-00934-COA-R3-CV, 2007 WL 1462226 at *8 (Tenn. Ct. App. May 18, 2007)

(reversing the trial court's post-remand award of attorney's fees for services rendered in drafting a QDRO and stating: "By entertaining Wife's subsequent request for attorney's fees, the lower court acted in excess of its authority when it considered a previously settled issue outside its scope on remand."); *Melton v. Melton*, No. M2003-01420-COA-R10-CV, 2004 WL 63437 at *5 (Tenn. Ct. App. Jan. 13, 2004) (reversing the trial court's decision to conduct an evidentiary hearing upon remand after concluding that the hearing exceeded the scope of remand ordered by this Court). As Wise correctly notes, the Seatons failed to raise this issue at the post-remand hearings prior to this appeal, but such a failure does not alter the status of the attorney's fee request as previously abandoned and settled. Having concluded that the trial court exceeded its authority in considering Wise's post-remand motion, we vacate the trial court's award of attorney's fees to Wise.

Finally, we address supplemental authority on this issue filed by the parties following oral argument in the instant appeal. Wise brings to our attention *Wilkes v. Shaw Enters., LLC*, No. M2006-01014-COA-R3-CV, 2008 WL 695882 at *1 (Tenn. Ct. App. Mar. 14, 2008) ("*Wilkes I*"), in which the plaintiffs had filed a motion for attorney's fees three days after they filed a notice of appeal. The trial court found that the plaintiffs had waived attorney's fees by not requesting them before filing the notice of appeal, but the trial court set an amount for attorney's fees in the event that this Court did not find the request waived. *Id.* at 11. The trial court memorialized its findings in an amended judgment, and the plaintiffs subsequently filed an amended notice of appeal. *Id.* This Court reviewed the amended judgment on appeal and held that the prior judgment in which the trial court did not address the issue of attorney's fees was not a final judgment because not all claims were adjudicated. *Id.* at 12. The Seatons in turn bring to our attention a subsequent decision by this Court in the same case, *Wilkes v. Shaw Enters.*, No. M2010-00195-COA-R3-CV, 2011 WL 1679042 (Tenn. Ct. App. May 4, 2011) ("*Wilkes II*"), entered upon the prevailing party's appeal of the trial court's post-remand decision to lower the amount of attorney's fees previously awarded. This Court held that the *Wilkes I* decision that plaintiffs were due attorney's fees on appeal was the "law of the case" and that the trial court did not have the authority to deny attorney's fees from the first appeal based upon its post-remand findings. *Id.* at *10. We find the situation in *Wilkes I* factually distinguishable from the instant action in that both the judgment and notice of appeal in *Wilkes I* were amended to address previously unlitigated claims that prevented the first judgment from becoming final and appealable. *See* 2008 WL 695882 at *11. We determine that this Court's decisions in both *Wilkes I* and *Wilkes II* support our conclusions, explained above, that Wise abandoned its counterclaim by not questioning the finality of the trial court's summary judgment and that the trial court subsequently exceeded its post-remand authority.

## V. Remaining Issues

Having concluded that Wise abandoned its counterclaim for attorney's fees and that the trial court exceeded its authority in hearing Wise's post-remand motion, we conclude that the Seatons' remaining issues regarding the trial court's application of the "Default" provision in the parties' Agreement and the reasonableness of Wise's counsel's fees are pretermitted as moot.

## VI. Conclusion

For the reasons stated above, we vacate the trial court's judgment awarding attorney's fees to Wise. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's summary judgment in favor of Wise and collection of costs assessed below. Costs of this appeal are assessed to Wise Properties-TN, LLC.

_____
THOMAS R. FRIERSON, II, JUDGE